**Richard D. JACKSON; Gloria J. Jackson, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 87–6552.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 1, 1988.*

Decided Aug. 2, 1989.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

**708**

Wesley H. Harris, Harris and Barry, San Diego, Cal., for plaintiffs-appellants.

Nita L. Stormes, Asst. U.S. Atty., San Diego, Cal., for U.S.

Before WRIGHT, NORRIS and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Appellants appeal an August 25, 1987, order limiting their attorney from receiving more than a $171,667 share of a $1,300,000 settlement that Appellants received from the federal government in an action brought under the Federal Tort Claims Act ("FTCA"). Appellants contend on appeal that the district court erred when it applied a California statute to limit attorney fees to roughly 13 percent of the recovery. We reverse.

I

Appellants retained attorney Wesley H. Harris to represent them in a suit arising from alleged medical malpractice in the care and treatment of Appellant Richard Jackson at the San Diego Naval Hospital. The initial contract between Appellants and their attorney provided for fees of 25 percent of any recovery, the maximum allowed for any judgments rendered under the FTCA. *See* 28 U.S.C. § 2678 (1982).[1] After a bench trial on the issue of liability alone, the district court ruled in favor of Appellants and requested that the parties hold a settlement conference to determine the amount of damages. The parties agreed to settle the case for $1,300,000. The attorney fees under the original contract would have been $325,000 (25 percent of $1,300,000), but Appellants and their attorney agreed to a lower fee of $248,000, which represented a compromise between the maximum allowed by federal law and the maximum allowed by California law. *See* Cal.Bus. & Prof.Code § 6146 (West Supp.1989).[2]

1. The federal statute provides:
 No attorney shall charge, demand, receive, or collect for services rendered, fees in excess of 25 per centum of any judgment rendered pursuant to section 1346(b) of this title or any settlement made pursuant to section 2677 of this title.... Any attorney who charges, demands, receives, or collects for services rendered in connection with such claim any amount in excess of that allowed under this section, if recovery be had, shall be fined not more than $2,000 or imprisoned not more than one year, or both.

2. During this time period the California statute provided, in relevant part:
 (a) An attorney shall not contract for or collect a contingency fee for representing any person seeking damages in connection with an action for injury or damages against a health care provider based upon such person's alleged pro-

fessional negligence in excess of the following limits:
 (1) Forty percent of the first fifty thousand dollars ($50,000) recovered.
 (2) Thirty-three and one-third percent of the next fifty thousand dollars ($50,000) recovered.
 (3) Twenty-five percent of the next one hundred thousand dollars ($100,000) recovered.
 (4) Ten percent of any amount on which the recovery exceeds two hundred thousand dollars ($200,000).
 The limitations shall apply regardless of whether the recovery is by settlement, arbitration, or judgment, or whether the person for whom the recovery is made is a responsible adult, an infant, or a person of unsound mind. Medical Injury Compensation Reform Act, ch. 1, § 24.2, 1975 Cal.Stat. 3967 (codified as amended at Cal.Bus. & Prof.Code § 6146 (West Supp.

The government disputed the attorney's entitlement to fees exceeding that allowed by California law.[3] Rather than allow the settlement agreement to collapse, however, the parties stipulated to a judicial resolution of the attorney fees dispute. The government then sought a ruling from the district court that would restrict Appellants' attorney from collecting more than the maximum fee allowed under California law. Appellants opposed the motion, arguing: (1) that the government lacked standing to contest a private fee agreement between Appellants and their attorney; and (2) that the federal attorney fees statute preempts the California attorney fees statute. The district court ruled that the government, as "the party obliged to disburse the settlement," had standing to raise the attorney fees issue. The district court further ruled that the federal statute would preempt the California statute only under circumstances where an attorney could collect fees in excess of 25 percent. The court therefore granted the government's motion and entered an order preventing Appellants' attorney from collecting more than $171,667. This timely appeal followed and we now have appellate jurisdiction pursuant to 28 U.S.C. § 1291 (1982).

## II

Appellants asserted below that the government lacked standing to challenge the validity of a private contingency fee agreement and that as a consequence the district court did not have federal jurisdiction to resolve the issue under the "case or controversy" requirement of article III of the federal constitution. For whatever reason Appellants have not renewed this argument on appeal. We note, nevertheless, that we are likewise without federal jurisdiction to resolve the issue unless we determine independently that a "case or controversy" was before the district court. *E.g.*, *Hodel v. Irving*, 481 U.S. 704, 711, 107 S.Ct. 2076, 2080, 95 L.Ed.2d 668 (1987).

### A

■ We begin by noting the obvious. The government had a substantial interest in defending the underlying action brought against it by Appellants. This interest in the case in chief easily satisfies the constitutional and prudential prerequisites to establishing jurisdiction under article III of the Constitution. *See Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). The issue of attorney fees arose only as an adjunct to the case in chief. We believe, for lack of a better term, that the government has "ancillary standing" by virtue of its status as a party to the case in chief sufficient for us to reach the merits of the attorney fees issue. *Cf.* 13A C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3531.16 (2d ed. 1984) (urging the concept of ancillary standing, but warning that the purposes of the standing requirements must be kept in mind in deciding whether standing ought to be established independently for any particular issue).

| 10% of any amount exceeding 200,000 (here, $1,100,000) | = | $110,000 $171,667 |
|---|---|---|

Appellants obviously do not dispute that the contingency fee agreement with their attorney calls for a fee exceeding this limitation.

The California legislature amended § 6146 in 1987 by increasing allowable fees in medical malpractice cases so that attorneys are entitled to collect up to 25% of any amount recovered between $100,000 and $600,000 and 15% of any amount recovered exceeding $600,000. Appellants' attorney would be entitled to $266,666.66 under the terms of the revised statute, but the revisions did not become effective until January 1, 1988.

---

1989)). Appellants concede that this provision, by its own terms, applies to this case because the tort was committed by a defined "health care provider." *See Taylor v. United States*, 821 F.2d 1428, 1431–32 (9th Cir.1987) (holding that medical personnel under the employ of the federal government are "health care providers"), *cert. denied*, —— U.S. ——, 108 S.Ct. 1300, 99 L.Ed.2d 510 (1988).

**3.** The allowable attorney fee under the state statute based on the settlement amount of $1,300,000 is calculated as follows:

| 40% of the first $50,000 | = | $ 20,000 |
|---|---|---|
| 33–⅓% of the next $50,000 | = | 16,667 |
| 25% of the next $100,000 | = | 25,000 |

We are even more convinced of this result when we consider that all courts possess an inherent power to prevent unprofessional conduct by those attorneys who are practicing before them.[4] This authority extends to *any* unprofessional conduct, including conduct that involves the exaction of illegal fees. *See Venegas v. Skaggs*, 867 F.2d 527, 532 n. 6 (9th Cir. 1989) (rejecting claim that the district court was without authority to review the reasonableness of a contingent fee agreement that provided compensation exceeding § 1988 statutory award); *Cooper v. Singer*, 719 F.2d 1496, 1505 (10th Cir.1983) (en banc) ("[f]ees are central to the [attorney-client relationship]," over which courts retain supervisory power, "and contingent fee arrangements are therefore subject to the court's supervision"); *Dunn v. H.K. Porter Co.*, 602 F.2d 1105, 1108 (3d Cir. 1979) ("courts have the power to monitor [contingency fee agreements] either through rule making or on an *ad hoc* basis"); *Schlesinger v. Teitelbaum*, 475 F.2d 137, 141 (3d Cir.) ("in its supervisory power over the members of its bar, a court has jurisdiction of certain activities of such members, including the charges of contingent fees"), *cert. denied*, 414 U.S. 1111, 94 S.Ct. 840, 38 L.Ed.2d 738 (1973); California Rules of Professional Conduct, Rule 2–107 (1975) (forbidding an attorney from entering "into an agreement for, charge or collect an illegal or unconscionable fee"); Model Code of Professional Responsibility, Canon 13 (1980) ("A contract for a contingent fee ... should always be subject to the supervision of a court, as to its reasonableness.").

That the court's attention is drawn to such unprofessional conduct by an opposing party who otherwise lacks an interest in the outcome simply does not detract from the court's inherent authority to regulate the members of its bar. Nor does the immediate resolution of an issue arising out of this inherent authority contravene the "case or controversy" requirement of article III. As noted by the Court of Appeals for the Fifth Circuit, "[T]he cornerstone of this constitutional limitation is that a federal court should decide only those questions necessary for adjudication of the case before it." *Hoffert v. General Motors Corp.*, 656 F.2d 161, 165 (5th Cir.1981), *cert. denied*, 456 U.S. 961, 102 S.Ct. 2037, 72 L.Ed.2d 485 (1982). In the specific circumstances of the case before us, judicial ratification of the parties' settlement agreement was essential to the proper conclusion of the case in chief. Therefore, "the district judge was necessarily confronted with passing upon the propriety of the contingency fee arrangement." *Id.;* *see also Cappell v. Adams*, 434 F.2d 1278, 1279–80 (5th Cir.1970) (when plaintiff "properly invoked the equitable jurisdiction of the court to approve the terms of the settlement," the "court thus had jurisdiction over both the subject matter and the parties"); *cf. Brown v. Watkins Motor Lines, Inc.*, 596 F.2d 129, 133 (5th Cir.1979) (Thornberry, J., dissenting) (proper distribution of attorney fees is ancillary to case in chief; "[i]t is enough that the case in chief be a case or controversy").

## B

Other courts, like the district court below, have treated this standing problem differently. But we cannot accept the rationale of these cases, which rests on a fiction that the "government has an interest in seeing that funds it owes to litigants are disbursed properly," *Allen v. United States*, 606 F.2d 432, 434 (4th Cir.1979), "even though ... the fee does not decrease the funds in the Treasury," *Freeman v.*

---

**4.** Local Rule 110–5 makes this point clear:

Every member of the Bar of this court and any attorney permitted to practice in this court ... shall ... comply with the standards of professional conduct required of members of the State Bar of California, and decisions of any court applicable thereto, which are hereby adopted as standards of professional conduct of this court. This specification shall not be interpreted to be exhaustive of the standards of professional conduct. In that connection, the Code of Professional Responsibility of the American Bar Association should be noted. No attorney permitted to practice before this court shall engage in any conduct which degrades or impugns the integrity of the court or in any manner interferes with the administration of justice therein.

*Ryan,* 408 F.2d 1204, 1206 (D.C.Cir.1968); *accord Wyatt v. United States,* 783 F.2d 45, 46 (6th Cir.1986) (government had standing to challenge contingency fee agreement that violated § 2678 of the FTCA). Quite simply, these cases fail to explain adequately what interest the government has in ensuring that the opposing parties' attorney does not collect an excessive fee.

Undoubtedly the "injury" under circumstances such as these is to the clients of the offending attorney; they are the ones who must compensate their attorney more than he is purportedly entitled. One might argue that the government suffers an injury derivative of the clients' because the excessive fee makes them unwilling to settle the case for a lesser amount, thereby effectively increasing the government's ultimate liability. The problem with this argument, at least here, is that the settlement agreement has fixed the amount of the government's liability and therefore cannot be remedied by a judicial decree.

The only other theory that is even remotely persuasive is that the government has an actual interest in ensuring that federal entitlement programs are not subverted by attorneys who wrestle congressionally appropriated funds from proper claimants. *Cf. Starr v. Bowen,* 831 F.2d 872, 874 (9th Cir.1987) (recognizing that the Secretary of Health & Human Services had standing to challenge fees recovered from successful disability claimants). Indeed, one of the decisions upon which the district court relied recognized the imperative of this rationale when it stated that the government's challenge to the fee agreement involved in that case was only "one aspect of the interest of Government officials in the programs they administer." *Freeman,* 408 F.2d at 1206; *cf. United States v. San Jacinto Tin Co.,* 125 U.S. 273, 278–87, 8 S.Ct. 850, 853–58, 31 L.Ed. 747 (1888) (the federal government lacks standing if its only purpose in bringing suit is to benefit some third party, but not if it has an actual beneficial interest in the outcome). *See generally* 13A C. Wright, A. Miller & E. Cooper, *supra,* § 3531.11 (2d ed. 1984 & Supp.1988) (general discussion of standing of government and public officials).

This unusual rationale cannot be extended to the facts of the case before us. The government does not "administer" programs under the FTCA; like any private litigant, it responds in money damages to successful tort claims brought against it. *See* 28 U.S.C. § 2674 (1982) (the United States is liable for torts committed by its agents "in the same manner and to the same extent as a private individual under like circumstances"). And even if one assumed that the government "administers" the FTCA as it does any other entitlement program, the fees limitation statute that it seeks to enforce here is a creation of state law, not federal law. Whatever the government's interest is in enforcing its own laws, *cf.* 13A C. Wright, A. Miller & E. Cooper, *supra,* § 3531.11, at 3 n. 5 (Supp. 1988) (positing that the FTCA authorizes public suits for private benefit (citing *Wyatt,* 783 F.2d at 46)), the interest it has in enforcing California's laws is a far too tenuous basis upon which to conclude that it has an interest in the outcome of the attorney fees dispute.

■ Nevertheless, as before, we conclude that article III jurisdiction is satisfied if a case or controversy exists for the case in chief and a collateral issue implicating a court's inherent powers, such as those involving unprofessional conduct, arises in that context. To conclude otherwise would effectively deprive a court of its inherent power to regulate the conduct of those who practice before it. So stated, we perceive the issue of this case to be whether Appellant's attorney exacted an illegal fee, in violation of his ethical obligations. We are thus squarely presented with the question of whether the California statute applies to actions brought under the FTCA. We review this question of law de novo. *Taylor v. United States,* 821 F.2d 1428, 1430 (9th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1300, 99 L.Ed.2d 510 (1988).

### III

Issues arising from actions brought under the FTCA are, obviously, governed by

federal law. But federal law specifically makes state law controlling to the extent needed to fix the government's substantive liability. *See* 28 U.S.C. § 2674 (1982) (the government is liable "in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages"); *id.* § 1346(b) (liability is determined "in accordance with the law of the place where the [negligent] act or omission occurred"); *see also Shaw v. United States*, 741 F.2d 1202, 1205 (9th Cir.1984) ("The components and measure of damages in FTCA claims are taken from the state where the tort occurred....."). At the same time, issues not affecting the government's substantive liability are determined solely by federal law; at most, state law provides only an interpretive guide to the outcome of these issues. *E.g., Hungerford v. United States*, 307 F.2d 99, 100 (9th Cir.1962) ("the language of §§ 1346(b) and 2674, requiring that the Government be considered as if it were a private person, has reference only to the determination of *substantive* liability, and not to the jurisdictional question of whether the suit is out of time" under the two-year federal statute of limitation (emphasis in original)) (overruled on other grounds by *Ramirez v. United States*, 567 F.2d 854 (9th Cir.1977)); *see also Quinton v. United States*, 304 F.2d 234, 240 (5th Cir.1962) (declining to follow majority rule of determining when an action accrues under federal statute of limitation). The government asserts that these provisions require application of the California statute. To agree with this proposition we must conclude that a limitation on attorney fees somehow relates to the government's substantive liability. We do not find any of the government's arguments for reaching this conclusion persuasive.

We thus reject the government's analogy to *United States v. Cohen*, 389 F.2d 689 (5th Cir.1967), in which the Court of Appeals for the Fifth Circuit held that attorney fees are "derivative" of the plaintiff's recovery. The issue confronted there was whether the plaintiff's attorney, who was entitled to 20 percent of the recovery under the former section 2678, had a higher priority than the United States in receiving his compensation. The court held that section 2678 did not create a "lien" on behalf of the attorney, and therefore the attorney's right to receive his fees was subject "to the government's right to set off" any amount awarded the plaintiff. *Id.* at 692. This ruling cuts against, rather than favors, the assumption that attorney fees are part of the government's liability because it makes clear that the plaintiff's attorney fees, whatever their amount, will not affect the amount the government ultimately pays.

Nor do we find persuasive the government's argument that the statute implicitly contemplates state regulation of attorney fees in FTCA cases because it expressly excludes only state laws that allow recovery for "prejudgment interest and punitive damages." Both prejudgment interest and punitive damages, if not excluded, would affect the government's substantive liability and thus fall squarely within the provision's own choice of law statement that the government is liable "to the same extent" a private individual would be under those same circumstances. In contrast, the waiver of sovereign immunity is to be construed narrowly so that the government is never held liable for a plaintiff's attorney fees, even if the local substantive law permits recovery of fees against a private individual in like circumstances. *See Johnson v. United States*, 780 F.2d 902, 904 (11th Cir. 1986); *Joe v. United States*, 772 F.2d 1535, 1536–37 (11th Cir.1985). Hence, limits placed on the amount an attorney may collect from his client will not decrease the amount the government ultimately pays. Here, for example, no matter the level of the fees that Appellant's attorney ultimately collects, the government's liability is fixed at the settlement amount of $1,300,-000. Since limitations placed on attorney fees cannot affect the government's substantive liability, we are convinced that the California limitation statute does not apply, notwithstanding the reference to state law in sections 1346(b) and 2674.

The government asserts alternatively that California has the power to regulate

attorney fees generally and that its statute applies notwithstanding the fact that attorney fees are not part of the government's substantive liability. Appellants counter that the state statute is preempted by its federal counterpart. "In determining whether a state statute is preempted," our sole task is to divine "the intent of Congress." *California Federal Savings & Loan Ass'n v. Guerra,* 479 U.S. 272, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987). Important to accomplishing this task is the consideration of whether the "state law stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)).

 Section 2678 unambiguously permits an attorney to collect on a contingency fee basis up to 25 percent of the recovery. The legislative history to this provision indicates that anything less than 25 percent is deemed to be a matter of private negotiation between the attorney and his client. *See* S.Rep. No. 1327, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin.News 2515, 2521. We believe that permitting states to regulate within this private sphere is contrary to the intent of Congress. Indeed, as noted by the Court of Appeals for the Seventh Circuit,

> Before 1966, the Federal Tort Claims Act provided the district court with discretion to determine the attorneys' fees to be paid in such actions.... Congress purposefully removed this matter from the discretion of the district court, so long as the fee fell within the section's guidelines of 25 percent. The contract between the Robaks and their counsel agreed upon a fee of 25 percent, within the statutory limits. The court thus had no choice but to accept this pre-existing arrangement.

*Robak v. United States,* 658 F.2d 471, 479–80 (7th Cir.1981). Congress's removal of such discretion, in our view, simply cannot be supplanted by state legislation. We therefore hold that California's statute is preempted to the extent that it purports to limit the amount of attorney fees that can be collected from a client who recovers in an action brought under the FTCA.

Accordingly, the judgment of the district court is REVERSED. Both parties are to bear their own costs on appeal.