PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

ANDREW L. CIBULA, Individually,
and as parent and next friend of
his minor son J.A.C.; JENNIFER L.
CIBULA, Individually, and as parent
and next friend of her minor son
J.A.C.,

　　　　*Plaintiffs-Appellees,*

v.

UNITED STATES OF AMERICA,
　　　　*Defendant-Appellant.*

No. 07-2127

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(1:05-cv-01386-GBL-TRJ)

Argued: October 28, 2008

Decided: January 5, 2009

Before MOTZ, GREGORY, and DUNCAN, Circuit Judges.

Reversed and remanded by published opinion. Judge Gregory
wrote the opinion, in which Judge Motz and Judge Duncan
joined.

## COUNSEL

**ARGUED**: William George Cole, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appel-

lant. Stuart Alan Raphael, HUNTON & WILLIAMS, L.L.P., McLean, Virginia, for Appellees. **ON BRIEF:** Jeffrey S. Bucholtz, Acting Assistant Attorney General, Chuck Rosenberg, United States Attorney, William Kanter, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Bruce J. Klores, Thomas W. Mitchell, BRUCE J. KLORES & ASSOCIATES, P.C., Washington, D.C.; Thomas J. Cawley, HUNTON & WILLIAMS, L.L.P., McLean, Virginia; George P. Sibley, III, HUNTON & WILLIAMS, L.L.P., Richmond, Virginia, for Appellees.

GREGORY, Circuit Judge:

The United States of America appeals the district court's decision not to place damages for future medical expenses, awarded in a Federal Tort Claims Act ("FTCA") action, into a reversionary trust. We find that the district court erred in applying Virginia law to this question. Therefore, we reverse the decision and remand the case to the district court for a proper application of California law.

I.

Appellees are Andrew Cibula, a Commander in the U.S. Navy who is an active-duty pilot and aerospace engineer; Jennifer Cibula, his wife; and "J.C.", their son. The events giving rise to this case involve the negligence of doctors at the Balboa Naval Medical Center in San Diego, California, in 1997, while Mrs. Cibula was pregnant with J.C. The Cibulas were stationed in San Diego at the time, although they currently live in Virginia. Mrs. Cibula was taking several medications during her pregnancy, and her doctors failed to monitor the development of the fetus properly, even after she complained repeatedly of cramping and reduced fetal movement that should have alerted the doctors to complications with the pregnancy. The doctors' negligence resulted in oxygen depri-

vation to the fetus. Mrs. Cibula underwent an emergency cae-
sarean section, and J.C. was born weighing slightly more than
five pounds—in the bottom tenth percentile of infants his age.
Doctors subsequently determined that J.C. had suffered a
brain hemorrhage in the days prior to his delivery and that he
had developed cerebral palsy.

After a bench trial, the U.S. District Court for the Eastern
District of Virginia awarded the Cibulas $28,389,289 in dam-
ages (present value): $2,704,800 in past care costs,
$22,823,718 in future care costs, $2,360,771 in lost future
earnings, $250,000 for J.C.'s pain and suffering, and
$250,000 for Mrs. Cibula's pain and suffering. Applying Vir-
ginia law, the court found that the Cibulas were entitled to one
lump-sum payment of damages, which was to be placed in a
trust administered by a court-appointed guardian ad litem.
The United States disputes neither the findings of fact nor the
award of damages.

The primary issue in this case is whether the district court
erred in failing to place the damages awarded to the Cibulas
into a reversionary trust. The United States contends that
§ 667.7 of the California Civil Procedure Code applies as the
law of the place where the incident occurred,* and that it

---

*Section 667.7 provides, in relevant part:

(a) In any action for injury or damages against a provider of health care
services, a superior court shall, at the request of either party, enter a judg-
ment ordering that money damages or its equivalent for future damages of
the judgment creditor be paid in whole or in part by periodic payments
rather than by a lump-sum payment if the award equals or exceeds fifty
thousand dollars ($50,000) in future damages.

. . .

(c) However, money damages awarded for loss of future earnings shall
not be reduced or payments terminated by reason of the death of the judg-
ment creditor, but shall be paid to persons to whom the judgment creditor
owed a duty of support, as provided by law, immediately prior to his
death. In such cases the court which rendered the original judgment, may,

requires the periodic payment of future damages awarded in a medical malpractice case whenever a party to the suit requests it, with payments ceasing upon the death of the beneficiary. Yet, the FTCA has been interpreted to prohibit ongoing obligations against the United States. *Hull v. United States*, 971 F.2d 1499, 1505 (10th Cir. 1992); *Frankel v. Heym*, 466 F.2d 1226, 1228-29 (3d Cir. 1972). The United States argues, however, that in this case, a reversionary trust is the best way to effectuate the FTCA's requirement that the United States be held liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674 (2000).

---

upon petition of any party in interest, modify the judgment to award and apportion the unpaid future damages in accordance with this subdivision.

. . .

(e) As used in this section:

(1) "Future damages" includes damages for future medical treatment, care or custody, loss of future earnings, loss of bodily function, or future pain and suffering of the judgment creditor.

(2) "Periodic payments" means the payment of money or delivery of other property to the judgment creditor at regular intervals.

. . .

(f) It is the intent of the Legislature in enacting this section to authorize the entry of judgments in malpractice actions against health care providers which provide for the payment of future damages through periodic payments rather than lump-sum payments. By authorizing periodic payment judgments, it is the further intent of the Legislature that the courts will utilize such judgments to provide compensation sufficient to meet the needs of an injured plaintiff and those persons who are dependent on the plaintiff for whatever period is necessary while eliminating the potential windfall from a lump-sum recovery which was intended to provide for the care of an injured plaintiff over an extended period who then dies shortly after the judgment is paid, leaving the balance of the judgment award to persons and purposes for which it was not intended. It is also the intent of the Legislature that all elements of the periodic payment program be specified with certainty in the judgment ordering such payments and that the judgment not be subject to modification at some future time which might alter the specifications of the original judgment.

The reversionary trust would allow the United States to make one lump-sum payment into the trust at the outset—presumably satisfying the prohibition against ongoing obligations—while the corpus of the trust would provide the Cibulas with periodic payments for J.C.'s future medical care and the balance would revert to the United States upon his death. This, the United States argues, would approximate § 667.7. The appellees do not agree with the government's position.

This Court has jurisdiction pursuant to 28 U.S.C. § 1346(b) (2000) and 28 U.S.C. § 1291 (2000).

## II.

The FTCA requires the law of the place "where the act or omission occurred" to be applied. 28 U.S.C. § 1346(b)(1). The act or omission in this case occurred in California. Thus, California choice-of-law rules govern our consideration, and the district court held as much. In making a choice-of-law determination, California undertakes a governmental interest test, first adopted in *Reich v. Purcell*, 432 P.2d 727 (Cal. 1967). In that case, the Supreme Court of California had to decide which law to apply when residents of California and Ohio had an automobile collision in Missouri. Missouri had a damages cap for wrongful death actions, while California and Ohio did not. The court determined that Missouri's interest in applying its law related primarily to its residents, and no party was a resident of Missouri. While determining the plaintiffs' proper domicile for the purposes of the conflicts analysis, the court noted, "Although plaintiffs now reside in California, their residence and domicile at the time of the accident are the relevant residence and domicile." *Id.* at 730; *see also Summers v. Interstate Tractor & Equip. Co.*, 466 F.2d 42, 48 n.3 (9th Cir. 1972); *Emery v. Emery*, 289 P.2d 218, 223 (Cal. 1955). Thus, because the plaintiffs were residents of Ohio and not California for conflicts purposes, and

since California had no damages cap to apply on behalf of the defendant, the court applied Ohio law.

The Cibulas currently reside in Virginia, but their residence and domicile at the time of the incidents giving rise to their claim was California, and under California choice-of-law principles, this is the relevant locus. The California Supreme Court noted the rationale behind this rule: "At the time of the accident the plans to change the family domicile were not definite and fixed, and if the choice of law were made to turn on events happening after the accident, forum shopping would be encouraged." *Reich*, 432 P.2d at 730. Additionally, the California legislature has indicated its interest in having § 667.7 apply:

> By authorizing periodic payment judgments, it is the further intent of the Legislature that the courts will utilize such judgments to provide compensation sufficient to meet the needs of an injured plaintiff and those persons who are dependent on the plaintiff for whatever period is necessary while eliminating the potential windfall from a lump-sum recovery which was intended to provide for the care of an injured plaintiff over an extended period who then dies shortly after the judgment is paid, leaving the balance of the judgment award to persons and purposes for which it was not intended.

Cal. Civ. Proc. Code § 667.7(f). Finally, even if the United States might be interpreted to "reside" in Virginia for the purpose of the California governmental interest test, *see Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 91-93 (1934), Virginia has not expressed its will regarding the periodic payment of medical malpractice damages, and its interest with regard to the parties is therefore minimal in comparison to that of California. Thus, under California's governmental interest test, California law should apply and not Virginia law.

But the parties dispute whether § 667.7 is a substantive law that must, under California choice-of-law principles, be applied in this case or a procedural one that should not be applied. In the decision below, the district court concluded, "The 'periodic payment' provision of California law on which the Government relies for this argument is a post-judgment, remedial statute. It is not part of California's substantive law on medical negligence. Post-judgment, remedial matters such as this are governed by federal law, and if no federal rule exists, then by the law of the forum state." (J.A. 89-90.) Since the district court was located in Virginia, it applied Virginia law and held that "[u]nder the choice of law rules of the Commonwealth, as neither federal nor Virginia law provide for periodic payments, the Government is not entitled to this remedy." (J.A. 90.)

If a state's law affects the substantive liability of the United States, then federal courts have applied it in FTCA cases. This approach was taken by the Supreme Court in *Richards v. United States*, 369 U.S. 1 (1962), when it applied a nominally procedural damage cap in favor of the United States because of the substantive difference in outcome the law would make. In that case, an airplane en route from Tulsa, Oklahoma, to New York City crashed in Missouri. A negligence suit was filed against the United States in the Northern District of Oklahoma, and the question was which state's law should apply. The Court held that Oklahoma choice-of-law principles should determine the governing law, since the act of negligence occurred in Oklahoma. Because Oklahoma choice-of-law provisions required a court to apply the substantive laws of the place where the injury occurred, the Court applied Missouri law—including its $15,000 cap on damages. *Id.*

One of the appellees' arguments in this case is that an analysis under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), would result in the application of Virginia law. However, the Supreme Court squarely addressed this issue in *Richards*:

> And, because the issue of the applicable law is con-
> trolled by a formal expression of the will of Con-
> gress, we need not pause to consider the question
> whether the conflict-of-laws rule applied in suits
> where federal jurisdiction rests upon diversity of citi-
> zenship shall be extended to a case such as this, in
> which jurisdiction is based upon a federal statute. In
> addition, and even though Congress has left to judi-
> cial implication the task of giving content to its will
> in selecting the controlling law, because of the for-
> mal expression found in the Act itself, we are pre-
> sented with a situation wholly distinguishable from
> those cases in which our initial inquiry has been
> whether the appropriate rule should be the simple
> adoption of state law.

*Richards*, 369 U.S. at 7-8 (internal footnotes omitted). Thus, because the FTCA contains an explicit instruction by Congress regarding which law to use, courts should not engage in their normal *Erie* analysis to make that determination. *See Smith v. United States*, 507 U.S. 197, 201 (1993); *United States v. Saint Louis Univ.*, 336 F.3d 294, 300 (4th Cir. 2003).

Other courts have followed the Supreme Court's lead in applying the nominally procedural damage caps to FTCA cases. The Seventh Circuit addressed the issue in *Carter v. United States*, 333 F.3d 791 (7th Cir. 2003), which involved a suit brought in Illinois for a tort that occurred in Maryland. The court held that Maryland law should apply, including its damages cap. The plaintiffs argued that the damages cap was procedural. The court disagreed, finding that substantive law "include[s] remedial law, such as the damages cap." *Id.* at 794. The court further noted that even if Maryland considered the law to be procedural, federal courts would not because "Illinois, though it is the state in which the federal district court that the plaintiff sued in is located, is not a forum state for purposes of conflicts analysis under the Tort Claims Act." *Id.* at 794. Instead, the court held, federal courts apply federal

procedure, not state procedure. "So even if Maryland would regard a damages cap as a procedural rule . . . it is not a *federal* procedural rule and so it did not bind the federal district court in this case." *Id.* Thus, because the federal courts would regard the damages cap as substantive and not procedural, the cap should apply regardless of what the state would have held.

The Third Circuit also addressed the issue in *Gould Electronics Inc. v. United States*, 220 F.3d 169 (3d Cir. 2000). There, the court considered a negligence action brought in a Pennsylvania court arising out of pollution from a battery manufacturing plant in New York that was owned and operated by companies domiciled in Ohio. The Third Circuit, under New York choice-of-law principles, applied the Ohio contribution rule even though the appellants argued that it was procedural. *Id.* at 179 n.10, 191. With regard to the effect the choice-of-law decision might have on the eventual outcome of the case, the court noted that because it "must apply the 'whole law' of the state where the act or omission occurred, regardless of where the suit is filed. . . . [T]here can be no forum shopping for substantive law under the FTCA." *Id.* at 191.

Finally, in *Jackson v. United States*, 881 F.2d 707, 712 (9th Cir. 1989), the Ninth Circuit held that the FTCA "specifically makes state law controlling to the extent needed to fix the government's substantive liability." But as to matters that do not affect the substantive liability of the United States, federal law controls. *Id.* Indeed, "issues not affecting the government's substantive liability are determined solely by federal law; at most, state law provides only an interpretive guide to the outcome of these issues." *Id.* Thus, case law instructs us that the distinguishing feature between substantive and procedural laws is the substantive liability of the United States, i.e., "the amount the government ultimately pays." *Id.*

Because application of § 667.7 would affect the government's ultimate liability, we find the district court's conclu-

sion that the statute is procedural to be in error. We therefore remand this case to the district court to craft a remedy that holds the government liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. In its opinion below, the district court did not make findings to determine whether the creation of a reversionary trust would, if properly structured, impose liability on the government in the same manner and to the same extent as a private individual invoking § 667.7. The detailed economics involved in the case caution against our making a specific ruling on the matter in the first instance.

### III.

The district court erred in applying Virginia law to this case. We therefore reverse that decision and remand the case to the district court for further post-trial proceedings not inconsistent with this opinion.

*REVERSED AND REMANDED*