**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1940
_____

MARQUIS WILSON,
Appellant

v.

UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 19-cv-04257)
District Judge:  Honorable Gerald A. McHugh
_____

Argued:  June 20, 2023
_____

Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, BIBAS and MATEY,
<u>Circuit</u> <u>Judges</u>

(Filed: August 21, 2023)
_____

Julia E. Fine [ARGUED]

Claire R. Cahill
Kari M. Lorentson
Williams & Connolly
680 Maine Avenue SW
Washington, DC 20024

      Counsel for Appellant

Matthew Howatt
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

Catherine M. Padhi [ARGUED]
Sushma Soni
Mark B. Stern
United States Department of Justice
Civil Division
950 Pennsylvania Avenue NW
Washington, DC 20530

      Counsel for Appellee

_____

OPINION OF THE COURT
_____

CHAGARES, <u>Chief</u> <u>Judge</u>.

Marquis Wilson challenges the District Court's grant of summary judgment to the Government in his Federal Tort Claims Act ("FTCA") lawsuit for medical negligence. The

dispositive issue here is whether Pennsylvania Rule of Civil Procedure 1042.3 ("Rule 1042.3"), which requires medical malpractice plaintiffs to certify either that they have expert support for their claims or instead will proceed without an expert, applies in FTCA cases like Wilson's. The grant of summary judgment here was predicated upon Wilson's Rule 1042.3 certification to proceed without an expert to support his claim. Because we interpret the FTCA not to incorporate Rule 1042.3, and because Wilson did not otherwise have an adequate opportunity to seek out an expert or conduct discovery prior to the District Court's decision due to his unique position as a pro se inmate during the COVID-19 pandemic, we will reverse the grant of summary judgment and remand this case to the District Court.

I.[1]

A.

Rule 1042.3 requires a Pennsylvania plaintiff claiming professional malpractice to file a so-called "certificate of merit" either with the complaint or within 60 days of filing it. As relevant here, the certificate of merit must attest that either (1) an appropriate licensed professional supplied a written statement that there exists a reasonable probability that the professional services provided fell outside acceptable professional standards, or (2) expert testimony of an

---

[1] Wilson was represented in this appeal by pro bono counsel Julia E. Fine, Claire R. Cahill, and Kari M. Lorentson of Williams & Connolly LLP. We thank them for their skillful advocacy in this matter.

3

appropriate licensed professional is unnecessary.[2]  Pa. R. Civ. P. 1042.3(a)(1) & (3).   A note appended to Rule 1042.3 provides that, in the "absence of exceptional circumstances," a plaintiff who certifies that expert testimony is unnecessary for prosecution of the case is precluded from subsequently presenting testimony by an expert on the questions of standard of care and causation.  Pa. R. Civ. P. 1042.3(a)(3) n.1.

The Rule was implemented in January 2003 when the

---

[2] The key provisions of Rule 1042.3 read as follows:

(a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

. . .

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

4

Supreme Court of Pennsylvania "determined that malpractice actions were being commenced in the Pennsylvania courts more frequently." Womer v. Hilliker, 908 A.2d 269, 275 (Pa. 2006). That rise in malpractice litigation led to an attendant increase in what the Court termed "malpractice claims of questionable merit." Id. The Court adopted Rule 1042.3 pursuant to its rulemaking authority under the Pennsylvania Constitution, intending the provision to be "an orderly procedure that would serve to identify and weed non-meritorious malpractice claims from the judicial system efficiently and promptly." Id. The consequences for failing to comply with the Rule 1042.3 certificate of merit requirement are accordingly severe: a non-compliant lawsuit will be dismissed once the opposing party has followed the requisite procedures. See Schmigel v. Uchal, 800 F.3d 113, 117 (3d Cir. 2015) (explaining that the "ultimate consequence of the failure to comply [is] termination of the suit").

B.[3]

With the foregoing background in mind, we turn to the facts and procedural history of Wilson's case. While being held as a pretrial detainee in Philadelphia in 2017, Wilson complained to medical staff at the Federal Detention Center ("FDC") in Philadelphia about a lump on one of his testicles. Wilson was seen by medical staff in November 2017, who noted the testicular swelling and allegedly told him that a lump in that area was probably cancerous. Wilson subsequently

---

[3] Because the District Court granted summary judgment before any discovery was conducted, the relevant factual background here is taken from Wilson's complaint and the Government's answer.

complained to FDC staff that his condition worsened, but he asserts that no further medical treatment was provided at that time. Wilson was eventually sentenced in early 2018 and then transferred to Bureau of Prisons custody, where he was seen by medical staff at USP-Allenwood. Wilson was referred to a urologist who determined in February 2018 that the lump was cancerous. Wilson underwent surgery on February 21, 2018, to remove his right testicle. Medical staff at USP-Allenwood purportedly told Wilson that "the lump should have been treated earlier for best results but by that point the only course of action was to remove one of [Wilson's] testicles which was done surgically." Joint Appendix ("JA") 18.

Wilson believed that, had his cancer been caught and addressed earlier, treatment would not have involved chemotherapy and the invasive surgery, which he asserts led to side effects including the loss of ejaculatory function. After exhausting his administrative remedies, Wilson filed a lawsuit in the United States District Court for the Eastern District of Pennsylvania alleging medical negligence under the FTCA. The Government subsequently filed a notice of its intent to seek dismissal of the complaint because Wilson had not filed a certificate of merit pursuant to Rule 1042.3.

The District Court set a deadline for Wilson, who was at that time proceeding pro se, to take a position on the certificate of merit, but it subsequently granted him multiple extensions of time, partly due to the onset of the COVID-19 pandemic. The District Court eventually denied Wilson's additional motion for an extension and request for appointment of counsel, and the Government promptly moved to dismiss. In response to the motion to dismiss, Wilson explained that he would like to have an expert testify about his deficient medical

6

care, but "concede[d] to the impossibility" of obtaining a medical expert "in the midst of a [g]lobal [p]andemic" that had caused prison lockdowns. JA 31–32. He stated "under protest" that his medical records would "obviously" demonstrate that his injury "was not inevitable and happened [as a] result of [the Government's] negligence," and he could prove his claim without expert testimony "at this juncture." JA 29–30.

The Government thereafter withdrew its motion to dismiss, filed an answer, and immediately moved for summary judgment. In the Government's view, Wilson's Rule 1042.3 certification that he would not offer expert evidence "precluded [him] from offering expert testimony in this case on the questions of standard of care and causation." JA 69. The Government argued that Wilson's suit could not be proven under a res ipsa loquitur theory, his sole expert-less avenue of proving liability. In the Government's view, Wilson needed expert testimony to prove elements of his claim and was now precluded from presenting that testimony based on his Rule 1042.3 election. This, the Government claimed, entitled it to summary judgment.

Wilson's summary judgment opposition asked the court "to move forward with discovery." JA 79. In addition to re-asserting his view that his case could be proven by res ipsa loquitur, Wilson specifically identified "medical documents chronicled by the [Bureau of Prisons] while and since [he had] been in its custody" as discoverable material that would substantiate his allegations. Id. He also disputed the Government's claim that he would be precluded from offering an expert later in the case. Though he acknowledged his prior Rule 1042.3 certification, he stated that he "would love to have

7

an expert attest" to his claims and asserted that his "case and the circumstances around it are so unusual [that] it would satisfy the standard for a medical expert to be available later." Id. In particular, he discussed at length the difficulties he faced securing expert testimony as a pro se prisoner during the COVID-19 pandemic. Id.

Following the parties' summary judgment briefing, the District Court sua sponte stayed all deadlines and ordered the case listed with the District Court's pro bono prisoner civil rights panel. The case remained on the pro bono list for one year. In response to a notice from the court requiring him to act if he wished for his case to remain on the pro bono list, Wilson elected to have his case removed therefrom and to proceed again pro se. The District Court ordered Wilson to file any additional submissions in response to the pending summary judgment motion within 45 days. Wilson did not submit any further responses.

The District Court granted summary judgment to the Government. It acknowledged that the parties had not conducted any discovery and that the Government "denie[d] various facts." Wilson v. United States, 2022 WL 1227974, at *2 n.1 (E.D. Pa. Apr. 26, 2022). It nevertheless determined that the "material facts essential to [Wilson's] claim" were not in dispute with respect to Wilson's claims of belated treatment. Id. The District Court also separately noted the growing body of authority holding that state certificate of merit requirements do not apply in FTCA actions but stated that it need not decide that issue to resolve the summary judgment motion. Id. at *2 n.2. It held that, regardless of whether Wilson needed to comply with Rule 1042.3(a), he was bound by his statement of intent to proceed without an expert and to rely only on a res

8

ipsa loquitur theory.  Id. at *2.  Wilson thus needed to show, without expert testimony, that his injury would not usually occur absent negligence and that the evidence sufficiently eliminated other causes of the harm.  Id. at *3.  The District Court then determined that, while a factfinder could find without expert testimony that the delay in treatment of Wilson's testicular lump was unreasonable, the issue of whether the delay was the cause of the eventual need to remove Wilson's testicle was complex and required expert testimony.  Id. at *3–4.  Wilson, of course, had said he had no such expert; thus, the District Court concluded that summary judgment was warranted.  Id.  Wilson timely appealed.

## II.

The District Court had jurisdiction over Wilson's FTCA claim under 28 U.S.C. §§ 1331 and 1346.  This Court has appellate jurisdiction over Wilson's appeal of the District Court's grant of summary judgment under 28 U.S.C. § 1291.  Our review of a district court's grant of summary judgment is plenary.  Sikora v. UPMC, 876 F.3d 110, 113 (3d Cir. 2017).

## III.

We hold that Rule 1042.3's certificate of merit requirement does not apply in FTCA cases.[4]  Our analysis

---

[4] The applicability of Rule 1042.3 is appropriately before us despite the Government's urging to the contrary.  Wilson's decision — made "under protest," JA 30 — to proceed without an expert pursuant to Rule 1042.3 resulted from the Government's attempt to dismiss Wilson's case for lack of a certificate of merit.  And, though the District Court

centers on the statutory language through which Congress has explicitly delineated the extent to which state law is to be applied as federal law in FTCA cases.  See Richards v. United States, 369 U.S. 1, 7 (1962) (holding that in FTCA cases "the issue of the applicable law is controlled by a formal expression of the will of Congress").  To this end, the FTCA provides that when the United States is sued in tort it "shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  The statute also waives the federal government's sovereign immunity for personal injury claims "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1); see also Xi v. Haugen, 68 F.4th 824, 837–38 (3d Cir. 2023).

The FTCA's incorporation of state law is limited in scope and reaches only a subset of potentially relevant state legal rules.  The Supreme Court has instructed that "§ 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA."  F.D.I.C. v. Meyer, 510 U.S. 471, 478 (1994) (emphasis added).  We have in turn interpreted Meyer and its progeny to mean that state law supplies "[t]he cause of action in an FTCA claim."

thoughtfully identified the thorny issues raised by Rule 1042.3's application to the FTCA context and attempted to avoid the issue, its summary judgment grant was nonetheless based upon the premise that Wilson was bound by his election to proceed without an expert as well as his consequent decision to rely solely upon the doctrine of res ipsa loquitur to prove his case.  Rule 1042.3's applicability to FTCA cases is therefore directly presented and integral to the outcome of this appeal.

CNA v. United States, 535 F.3d 132, 141 (3d Cir. 2008). Other Courts of Appeals have described the scope of the FTCA's incorporation of state law using similar liability-oriented language. See, e.g., Calderon-Ortega v. United States, 753 F.3d 250, 252 (1st Cir. 2014) (observing that the FTCA's incorporation of state law encompasses a state's "rules of decision"); In re Supreme Beef Processors, Inc., 468 F.3d 248, 252 n.4 (5th Cir. 2006) (concluding that the FTCA's incorporation language reflects Congress's decision "to incorporate standards for federal conduct that mirror applicable state standards of liability"). No matter the precise terminology used, the common thread running through each of these decisions is recognition of the FTCA's limited incorporation of state law — specifically, that the FTCA incorporates only state law that governs liability in tort.

Applying that limited incorporation language to the case at hand, Pennsylvania common law provides Wilson's cause of action alleging medical negligence under the FTCA. See Hightower-Warren v. Silk, 698 A.2d 52, 54 (Pa. 1997). A Pennsylvania medical malpractice plaintiff "must establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered and the damages suffered were a direct result of the harm." Id. As a result, those common law elements are what Wilson must prove to win his case — that is precisely the sort of liability-determining law that the FTCA incorporates. Rule 1042.3, on the other hand, does not define a cause of action or otherwise determine the "manner" and "extent" of liability, 28 U.S.C. § 2674. Instead, it is a judicially-created rule located tellingly in the Pennsylvania Rules of Civil Procedure. Per the Pennsylvania Supreme Court's own description, Rule 1042.3 is an immediate, post-pleading barrier

11

to entry meant to weed out malpractice claims "of questionable merit" early in proceedings to avoid wasting time and resources.  Womer, 908 A.2d at 275.  No part of that explanation suggests that Rule 1042.3 is itself an element or evidence of a malpractice claim or otherwise part of the liability analysis.  In fact, the Pennsylvania state constitution requires that any rule created by the Pennsylvania Supreme Court — of which Rule 1042.3 is one — must not "abridge, enlarge nor modify the substantive rights of any litigant."  Pa. Const. Art. 5, § 10(c).  There thus can be little doubt that Rule 1042.3's certificate of merit requirement does not determine liability.  It is, instead, a technical requirement dictating what plaintiffs must do in Pennsylvania state court to vindicate their rights.  Rule 1042.3 is therefore not incorporated by the FTCA.

The Government argues that Rule 1042.3's certificate of merit requirement is applicable here because this Court has already determined that the Rule is substantive state law applicable in federal court in Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 264 (3d Cir. 2011).  But in Liggon-Redding, we engaged in the choice-of-law analysis for purposes of diversity jurisdiction.  We determined that Rule 1042.3 is "substantive" under the familiar principles laid out in Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), and its progeny, and that it should thus be applied in a diversity case.  That is an entirely distinct inquiry from determining which state laws allocate or inform tort liability and are thus incorporated as federal law in an FTCA case.

The Supreme Court recognized this analytical distinction in Richards when it explained that the FTCA "present[s] . . . a situation wholly distinguishable from [diversity] cases" because the FTCA involves "a formal

12

expression of the will of Congress." 369 U.S. at 7. In light of that distinction, the Supreme Court held in Richards that it is not necessary "to consider the question whether the [Erie] rule applied in suits where federal jurisdiction rests upon diversity of citizenship shall be extended to" FTCA cases. Id.; see also Cibula v. United States, 551 F.3d 316, 320–21 (4th Cir. 2009) ("[B]ecause the FTCA contains an explicit instruction by Congress regarding which law to use, courts should not engage in their normal Erie analysis to make that determination."); F.D.I.C. v. Wabick, 335 F.3d 620, 625–26 (7th Cir. 2003) (observing that where a statute "contains an explicit direction of where to find the appropriate law[, t]he question we must answer—one of statutory interpretation—is therefore distinct from any questions about the application of the Erie doctrine . . . . Where Congress tells us which laws to look to we are not authorized to disregard that directive"). Put simply, the FTCA's statutory language includes an explicit mandate articulating the precise bounds of state law incorporation in an FTCA case, and that language requires an inquiry that is different than the diversity jurisdiction analysis we conducted in Liggon-Redding.

That we analyze FTCA incorporations of state law differently than we do applications of state law in diversity jurisdiction cases makes sense given the unique choice-of-law principles underpinning the Erie doctrine that do not apply in the FTCA context where no such choice of law occurs. Consider, for example, our core conclusion in Liggon-Redding: that Rule 1042.3 was substantive state law because "the failure to apply [it] would be outcome-determinative and . . . would frustrate the twin aims of the Erie Rule: discouraging forum shopping and avoiding inequitable administration of the

13

laws." 659 F.3d at 264. Such reasoning has no bearing on the FTCA state law incorporation analysis for several reasons.

Just because a state rule of civil procedure is outcome determinative does not necessarily mean that it informs the state law merits-based liability determination as required for FTCA incorporation. As other Courts of Appeals have recognized in similar cases, failing to apply a state certificate of merit rule in an FTCA case "may mean that fewer complaints are dismissed as 'procedurally defective,' but it will do 'nothing to change the scope of the Government's liability' because state law continues to supply the 'rules of decision.'" Pledger v. Lynch, 5 F.4th 511, 522–23 (4th Cir. 2021) (quoting Gallivan v. United States, 943 F.3d 291, 295 (6th Cir. 2019)). Rule 1042.3 "neither modifies [the common law] standard of liability nor elucidates the types of evidence required to establish the standard, its breach, or causality. The [expert] opinion required by [Rule 1042.3] does not 'play any role in the post-complaint adjudication of a medical malpractice claim.'" Corley v. United States, 11 F.4th 79, 86 (2d Cir. 2021) (quoting Shields v. United States, 436 F. Supp. 3d 540, 542 n.2 (D. Conn. 2020)). It is therefore not a rule of tort liability incorporated by the FTCA, even if it may be "substantive" for the purposes of Erie.

Nor are the forum shopping, inequitable administration of the laws, and federalism policy considerations driving Erie's substance-versus-procedure analysis applicable here because FTCA cases are necessarily always brought in federal court. See Pledger, 5 F.4th at 532–34 ("[T]he Erie factors identified by the Supreme Court seem meaningless in the face of an FTCA suit.") (Quattlebaum, J., concurring in part and dissenting in part). The Government recognized as much in its

briefing, as did the District Court when it observed that it was "not intuitively obvious that the Pennsylvania rule should apply in this federal statutory context" due to the lack of forum shopping and federalism concerns. Wilson, 2022 WL 1227974, at *2 n.2. Our determination in Liggon-Redding that Rule 1042.3 was "substantive" for the purposes of Erie — grounded in diversity jurisdiction considerations inapplicable to the FTCA context — thus does not undermine or conflict with our conclusion here that the Rule is not one of liability that must be incorporated as federal law for FTCA purposes.[5]

---

[5] Though Liggon-Redding is the focal point of the Government's case, and thus our analysis here, there are similar cases in which this Court has applied certificate of merit requirements in diversity jurisdiction cases. See Chamberlain v. Giampapa, 210 F.3d 154, 160 (3d Cir. 2000); Schmigel, 800 F.3d at 117. We have similarly found a certificate of merit requirement to apply in cases arising under 28 U.S.C. § 1334(b) and its provision granting federal courts concurrent jurisdiction over "all civil proceedings . . . related to [bankruptcy] cases under title 11." Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C., 692 F.3d 283, 293 (3d Cir. 2012). The same rationale articulated here distinguishing the FTCA context from diversity cases like Liggon-Redding applies with equal force to "related to" jurisdiction cases like Nuveen. Most fundamentally, diversity jurisdiction and "related to" jurisdiction both require federal courts to adjudicate state law claims that may be brought in state court; the considerations underpinning the Erie doctrine therefore apply with equal force in "related to" cases. FTCA cases, by contrast, can only be heard in federal court and require the application of state law only because Congress elected to adopt the state law rules of

15

Because Rule 1042.3's certificate of merit requirement does not determine the manner and extent of liability under Pennsylvania law and is thus not incorporated by the FTCA, Wilson's representations attendant to that provision — that he would proceed without an expert and rely solely on a res ipsa loquitur theory — should not have bound him on summary judgment.

We recognize that Wilson's case had been pending for several years at the time of the summary judgment grant, and we commend the District Court for repeatedly going out of its way to accommodate Wilson by allowing him numerous extensions to obtain representation or otherwise build his case. It is clear that the District Court thoughtfully and carefully attempted to balance Wilson's interests and circumstances with the expedient disposition of justice. Wilson, it is true, neither found an expert nor apparently attempted to conduct discovery during these periods of accommodation. In a different case, such an extended elapsed time period, combined with a plaintiff's ostensible inactivity and subsequent stated intent to proceed without an expert, may have justified a grant of summary judgment irrespective of Rule 1042.3's applicability. Here, however, Wilson was a prisoner proceeding pro se during the COVID-19 pandemic, a period during which prisons were on frequent lockdown. These factors inarguably undermined his ability to seek out an expert. Such extenuating

_____

decision. Moreover, Congress has chosen to supplant certain aspects of state law rules of decision in FTCA cases. See Supreme Beef, 468 F.3d at 252 n.4 (noting that Congress has imposed "substantive limits on t[he] incorporation" of state law in FTCA cases, including the "discretionary function and intentional tort exceptions to the FTCA").

16

circumstances, which Wilson articulated in his filings, culminated in his decision made "under protest" to proceed without an expert in order to stave off the Government's Rule 1042.3-based motion to dismiss. JA 30. Wilson thereafter continued to assert in his opposition to summary judgment that he could later present expert testimony and that he should be permitted to seek discovery. These factors and filings militate against the conclusion that pre-discovery summary judgment based on Wilson's stated lack of expert testimony was appropriate. The District Court therefore erred in granting pre-discovery summary judgment.

## IV.

For the foregoing reasons, we will reverse the grant of summary judgment and remand to the District Court for further proceedings.