**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3476
_____

BRIAN SCHMIGEL, an adult individual,
                                        Appellant

v.

MIROSLAV UCHAL, MD, FASC, an adult individual
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-14-cv-00358)
District Judge:  Honorable Arthur J. Schwab
_____

Argued: January 22, 2015

Before:  RENDELL, SMITH, and KRAUSE, *Circuit Judges*

(Opinion Filed:  September 2, 2015)
_____

NOAH P. FARDO
WILLIAM F. ROGEL        **(Argued)**
Flaherty Fardo

812 Ivy Street
Pittsburgh, PA 15232

       *Counsel for Appellant*

DANIEL P. CARROLL, JR.
KRISTIN L. PIESESKI     **(Argued)**
TIMOTHY R. STIENSTRAW
Davies, McFarland & Carroll
One Gateway Center
Tenth Floor
Pittsburgh, PA 15222

       *Counsel for Appellee*

—————

OPINION OF THE COURT

—————

KRAUSE, *Circuit Judge*:

       In 2003, the Pennsylvania Supreme Court grew troubled by the frequency of meritless professional malpractice claims filed in the state system. To address that concern, the Court amended the Pennsylvania Rules of Civil Procedure to require malpractice plaintiffs or their attorneys to file a certificate of merit ("COM") within sixty days of bringing suit. Failure to comply conferred upon a defendant the right to have the action dismissed. Five years after the COM regime was enacted, however, Justices of the Supreme Court grew concerned that it had the unintended consequence of requiring the dismissal of meritorious claims due to technical oversights by plaintiffs or their attorneys. Thus, the

2

Court amended the Rules again, setting a number of conditions that had to be met before a defendant could seek dismissal of an action for failure to comply.

We have previously held that the COM requirement is substantive state law that must be applied by a federal court sitting in diversity. *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011). In this appeal, we consider whether one of Pennsylvania's conditions precedent to dismissing an action for failure to comply with the COM requirement, fair notice to a plaintiff, is also substantive law. We conclude that it is, and thus will reverse the judgment of the District Court.

## I.   **Facts and Procedural History**[1]

In 2010, Appellee Dr. Miroslav Uchal performed laparoscopic adjustable gastric band surgery, a procedure intended to place a band around a person's stomach to limit his food intake and help him lose weight, on Appellant Brian Schmigel. The surgery went awry, however, and the band was left "free floating in his abdomen." App. 20a. As a result, Schmigel not only failed to lose weight; he suffered internal scarring, limiting his options for similar surgeries into the foreseeable future.

---

[1] In an appeal from a motion to dismiss, we review the allegations of the complaint and all reasonable inferences drawn therefrom in the light most favorable to Schmigel, the non-moving party. *See Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir. 1987).

3

With the benefit of the discovery rule, Schmigel filed suit against Uchal just inside Pennsylvania's statute of limitations for professional malpractice actions. Between the surgery and the initiation of the suit, Uchal had moved to Florida so that Schmigel, a resident of Pennsylvania, was able to sue in the United States District Court for the Western District of Pennsylvania on the basis of diversity jurisdiction. Schmigel's attorney asked Uchal to accept service of the complaint,[2] but Uchal declined. Instead, realizing that no COM had been filed with the Complaint, Uchal waited out the sixty-day window in which a plaintiff may file a COM after initiating suit to sustain a malpractice action under Pennsylvania law, *see* Pa.R.C.P. Nos. 1042.2-1042.10, and on day sixty-nine, filed a motion to dismiss.

The next day, Schmigel's counsel filed an "answer" to the motion, which included the missing COM and an affidavit explaining that counsel had timely consulted with a doctor but, due to an oversight, had not prepared a COM. In the briefing that followed, the parties disputed, among other things, whether Schmigel had substantially complied with the COM requirement, whether his failure should have been excused, and—because Uchal had not waited thirty days after giving notice of the deficiency to allow for cure before filing his motion to dismiss, which is one of the conditions

_____

[2] Schmigel's attorney represented he made this request of Uchal in a sworn affidavit to the District Court and again before us in argument.

4

precedent to dismissal under Pennsylvania law—whether Uchal had the right to seek dismissal in the first place.[3]

The District Court granted the motion and dismissed the claim. *Schmigel v. Uchal*, No. 14-358, 2014 WL 3397669, at \*7 (W.D. Pa. July 11, 2014). First, the District Court held, under our precedent, that Pennsylvania's COM requirement was substantive law that a federal court must

---

[3] The briefing came about in an unusual posture. Two days after Schmigel filed his "answer," which was an attempt to quickly fix his failure to file the COM, Uchal filed a reply and Schmigel moved for leave to file a full memorandum of law in support of his previously-filed "answer." The District Court ruled that Schmigel's "answer" was his response to the motion, but allowed him to file his memorandum as a surreply. Thus, Uchal argued in his briefing before us that Schmigel waived his argument about the notice requirement by not fully developing his position until his surreply in the District Court. At argument, however, Uchal conceded that we should address the issue on the merits in recognition of the unusual briefing schedule set by the District Court, along with the understanding that the doctrine of waiver is a discretionary one that "may be 'relaxed whenever the public interest . . . so warrants.'" *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011) (alteration in original) (quoting *Rogers v. Larson*, 563 F.2d 617, 620 n.4 (3d Cir. 1977)). We agree, and will do so. *See Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown*, *P.C.*, 692 F.3d 283, 302 (3d Cir. 2012) ("[The Appellant's] choice-of-law arguments involve issues purely of law, and given that they involve choice of law, the public interest weighs toward our consideration of them.").

apply when sitting in diversity. *Id.* at *3. Second, the District Court found that neither of Pennsylvania's equitable exceptions for allowing a late-filed complaint—substantial compliance and justifiable excuse—applied here. *Id.* at *5-7. The District Court did not address at all Schmigel's final argument, that Pennsylvania's notice requirement as a condition of dismissal applied in federal court, so that Uchal's failure to satisfy that condition precluded dismissal. This appeal followed.[4]

## II.  Discussion

### A. Pennsylvania's Certificate of Merit Requirement

As the Pennsylvania Supreme Court recounted in *Womer v. Hilliker*, 908 A.2d 269 (Pa. 2006), the Supreme Court adopted the COM regime "in January of 2003, having determined that malpractice actions were being commenced in the Pennsylvania courts more frequently." *Id.* at 275. With that recognition came concern that state courts would be overburdened with "malpractice claims of questionable merit." *Id.* Thus, the Court "devise[d] an orderly procedure that would serve to identify and weed non-meritorious malpractice claims from the judicial system efficiently and promptly." *Id.* The COM requirement was born.

---

[4] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction to hear the appeal under 28 U.S.C. § 1291. Because the matter before us is a pure question of law, our review is plenary. *See Foster v. Nat'l Fuel Gas Co.*, 316 F.3d 424, 430 (3d Cir. 2003).

Rule 1042.3 of the Pennsylvania Rules of Civil Procedure, the centerpiece of the COM regime, requires that within sixty days of filing "any action based upon an allegation that a licensed professional deviated from an acceptable professional standard," a plaintiff file a COM that states (1) "an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge" of the defendant "fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm"; (2) the claim is "based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard"; or (3) "expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim." Pa.R.C.P. No. 1042.3(a)(1)-(3). The purpose of the requirement is to create a reasonable, early barrier that all malpractice plaintiffs must meet:

> On the one hand, the presence in the record of a COM signals to the parties and the trial court that the plaintiff is willing to attest to the basis of his malpractice claim; that he is in a position to support the allegations he has made in his professional liability action; and that resources will not be wasted if additional pleading and discovery take place. On the other hand, the absence from the record of a COM signals to the parties and the trial court that none of this is so and that nothing further should transpire in the action, except for the lawsuit's termination.

*Womer*, 908 A.2d at 275-76 (internal footnote and citations omitted).

That ultimate consequence of the failure to comply—termination of the suit—is effectuated in state court upon the filing of a praecipe with a prothonotary, who in turn enters a judgment of non pros.[5] Pa.R.C.P. Nos. 1042.6-7. As originally written, the ability to seek dismissal for failure to file a COM had but one explicit condition: No dismissal could be entered if a plaintiff's timely motion seeking to extend the sixty-day window was pending. Pa.R.C.P. No. 1042.6(a) (West 2003) (amended 2008).[6]

## B. The Pennsylvania Supreme Court Identifies a Problem

In *Womer*, the Pennsylvania Supreme Court encountered a situation substantially similar to the one we face today. There, a plaintiff initiated a medical malpractice suit only months after the COM regime began and, within

---

[5] In state court, a judgment of non pros "effectively constitutes a dismissal of the cause without prejudice," so long as the statute of limitations has not expired. *Stroud v. Abington Mem'l Hosp.*, 546 F. Supp. 2d 238, 249 (E.D. Pa. 2008); *see also Haefner v. Sprague*, 494 A.2d 1115, 1118 (Pa. Super. Ct. 1985).

[6] The note accompanying the Rule described another condition, that the prothonotary could not enter a judgment if a COM had been filed late, but before the defendant had sought dismissal. *See* Pa.R.C.P. No. 1042.6(a) note (West 2003).

sixty days, served the defendant with an expert report from a doctor that stated the claim was meritorious. 908 A.2d at 273. The plaintiff or his counsel did not, however, actually file a COM. *Id.* Accordingly, as soon as the sixty-day deadline passed, the defendant filed a praecipe to dismiss the claim, and the prothonotary entered a judgment of non pros. *Id.* As here, the statute of limitations had run, and thus a presumptively meritorious claim came to a precipitous end. *Id.* at 274.

Two days after the filing of the praecipe, the plaintiff sought to reopen his case, arguing that, among other things, his failure to submit the COM was a result of his counsel's "oversight or mistake." *Id.* at 273. Included with that filing was a COM that his lawyer had written the previous day. The motion was denied, but on appeal the Superior Court reversed the trial court and reinstated the case. *Womer v. Hilliker*, 860 A.2d 1144 (Pa. Super. Ct. 2004) (unpublished table decision). The Pennsylvania Supreme Court then granted allocatur and reversed the Superior Court, terminating the plaintiff's claim.

In its decision, the Supreme Court acknowledged that the consequence of failing to comply with the COM requirement was a harsh one—the lawsuit's demise. 908 A.2d at 276. Thus, because the Court "always understood that procedural rules are not ends in themselves, and that the rigid application of [Pennsylvania] rules does not always serve the interests of fairness and justice," it adopted two equitable exceptions to the requirement: substantial compliance and justifiable excuse. *Id.* at 276, 279.[7] The

---

[7] Both exceptions have their origin in other parts of the Pennsylvania Rules of Civil Procedure: substantial

9

Court found, however, that neither exception was met in that case because the plaintiff's counsel "did not [timely] file a COM, even one that was defective." *Id.* at 277. As a result, while the plaintiff had a presumptively meritorious complaint supported by an expert report, and despite his attachment of the COM two days after receiving notice of the deficiency, his case was terminated.

Justice Baer, joined by Justice Castille, dissented, citing a number of cases for the proposition that "the courts of [Pennsylvania] have historically been loathe to put a litigant out of court on a potential meritorious claim for missing a filing deadline due to lawyer oversight," and observing "there is also ample law in Pennsylvania abhorring the practice of entering a snap judgment in response to such a mistake." *Id*. at 282-83 (Baer, J., dissenting). The dissent concluded that dismissal was in error because "within hours of being put on notice that he mistakenly did not meet all the technical requirements of the rule, [the plaintiff] moved to rectify that mistake and supplied the technically missing COM." *Id*. at 282.

Justice Baer's rationale quickly transitioned from dissent to rule, as it became the backbone of a significant change to the COM regime. Specifically, in 2008, the Pennsylvania Supreme Court amended the Rules of Civil Procedure to add additional conditions precedent to a defendant's dismissal of a case.[8] As a result of those changes,

___

compliance in Rule 126 and justifiable excuse in Rule 3051. *See id.* at 276, 279.

[8] The amendments changed the previous Rule 1042.6 into Rule 1042.7, and the substance of the note from 2003,

a Pennsylvania malpractice defendant now may dismiss an action only if four conditions are met: (1) there is not a pending motion (a) for a determination that a COM is unnecessary in the first place or (b) seeking to extend the time to file a COM; (2) a COM was not filed before dismissal was sought; (3) the defendant has attached proof that he served notice of the deficiency upon the plaintiff; and, as is relevant here, (4) thirty days has elapsed between the notice of deficiency and the defendant's attempt to terminate the action. Pa.R.C.P. No. 1042.7(a)(1)-(4).[9] The purpose of the changes to Rules 1042.6 and 1042.7 was to, among other things, "address concerns that the . . . rules . . . provide[d] for the entry of a judgment of non pros where there has been no notice of intent to enter such a judgment." Pa.R.C.P. No. 1042.6 explanatory cmt. (2008).

Justice Baer reflected upon the change in a later opinion:

> While my personal sentiments did not carry the day in *Womer*, the injustice sought to be

---

that no dismissal could be entered if a COM had been filed, was added as Rule 1042.7(a)(2).

[9] The Rules further specify two circumstances under which an action may be dismissed even without providing notice to a plaintiff, neither of which pertains to this case. *See* Pa.R.C.P. No. 1042.6(b) (stating that a judgment of non pros may be entered without notice (1) if a court has granted an extension of time to file and the plaintiff still failed to comply, or (2) if the court has denied a motion to extend the time to file).

11

remedied was accomplished via a subsequent amendment to the civil procedural rules requiring a defendant to give a plaintiff a thirty-day written notice of intention to file a praecipe for a judgment of non pros for failure to file a COM. Once notice was provided, the amended rules afforded the plaintiff an opportunity to seek a determination by the court as to the necessity of filing a COM. Thus, the harsh consequence arising from a plaintiff's failure to file a COM was ameliorated with a fair rule of process.

*Anderson v. McAfoos*, 57 A.3d 1141, 1154 (Pa. 2012) (Baer, J., concurring) (internal citations omitted); *see also Keel-Johnson v. Amsbaugh*, No. 07-200, 2009 WL 648970, at *6 (M.D. Pa. Mar. 10, 2009) (explaining that the new rules "severely limit[] the availability of non pros by permitting judgment only after ample notice to plaintiffs").

In sum, Rule 1042.7 was specifically intended to codify Justice Baer's dissenting view in *Womer* and to prevent the exact situation that confronts us today. That is, were this case in state court, Schmigel's claim would not have been dismissed because his attorney filed the COM as soon as he was notified of the deficiency and well within the thirty-day window for cure. We now must decide whether that condition precedent to dismissal applies equally to malpractice actions filed in federal court.

## C. Choice of Law Analysis

Pursuant to the *Erie* doctrine, "[a] federal court sitting in diversity must apply state substantive law and federal

12

procedural law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000). "This substantive/procedural dichotomy of the '*Erie* rule' must be applied with the objective that 'in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court [will] be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.'" *Id*. at 158-59 (alteration in original) (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945)). This outcome determinative test, however, "should not produce a decision favoring application of the state rule" unless it furthers one of *Erie*'s "'twin aims': 'discouragement of forum shopping and avoidance of inequitable administration of the laws.'" *Id*. (quoting *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)).

Consistent with these aims, we apply a three-part test to decide whether a state law or rule is substantive or procedural for *Erie* purposes. *See Liggon-Redding*, 659 F.3d at 262 (citing *Chamberlain*, 210 F.3d at 158-61). First, we "determine whether there is a direct collision between a federal rule and the state law or rule that the court is being urged to apply." *Liggon-Redding*, 659 F.3d at 262. If there is a direct conflict, and the federal rule is "constitutional and within the scope of the Rules Enabling Act," we apply the federal rule and end our analysis. *Chamberlain*, 210 F.3d at 159. Second, "[i]f there is no direct collision," we examine "whether the state law is outcome-determinative and whether failure to apply the state law would frustrate the twin aims of the *Erie* Rule to discourage forum shopping and avoid inequitable administration of the law." *Liggon-Redding*, 659 F.3d at 262. Finally, we consider "whether any

13

countervailing federal interests prevent the state law from being applied in federal court." *Id*.

As set forth below, we conclude that Pennsylvania's notice requirement, like the COM requirement itself, is substantive state law under *Erie* and therefore must be applied by a federal court sitting in diversity. We base this conclusion on (1) our precedent addressing Pennsylvania's COM rules and New Jersey's analogous Affidavit of Merit ("AOM") statute; and (2) an independent application of our three-part test under the *Erie* doctrine. We address each rationale in turn.

### 1. Our History with Pennsylvania's COM Regime and New Jersey's AOM Statute

This is not the first time we have addressed the requirement that a malpractice plaintiff provide a certificate or affidavit of merit, and we are guided by our precedent in *Chamberlain*, 210 F.3d 158-61 and *Nuveen*, 692 F.3d at 300-310, analyzing New Jersey's AOM statute; and *Liggon-Redding*, 659 F.3d 258, addressing Pennsylvania's COM regime. That precedent supports the notion that the COM regime's notice requirement should be construed as substantive law.

In *Chamberlain*, we examined New Jersey's AOM statute, which, like Pennsylvania's COM requirement, provides that if an AOM is not filed within sixty days of filing a malpractice suit that action may be dismissed with prejudice. N.J.S.A. § 2A:53A-27, 29; *Chamberlain*, 210 F.3d

14

at 157-58.[10]  After conducting our three-step *Erie* analysis, we held that the AOM statute did "not conflict with the Federal Rules of Civil Procedure and must be applied by federal courts sitting in diversity."  *Chamberlain*, 210 F.3d at 157. We also concluded that a failure to apply the statute would be contrary to the twin aims of *Erie* because a meritless malpractice claim in federal court could not be ended at the same early stage as in state court, thus encouraging forum shopping by plaintiffs and unfairly exposing professionals to meritless claims.  *Id*. at 161.  Having identified no countervailing federal interest preventing the law's application in federal court, we applied the AOM requirement as substantive law.  *Id*.  Most importantly for today's purposes, however, we did not apply the requirement untethered from its conditions.  Instead, we applied the primary condition precedent to dismissal, i.e., that sixty days (or 120 days for good cause shown) must have passed from the time of suit without the production of an AOM, *see id.* at 163, as well as New Jersey's four exceptions to dismissal with prejudice, *see Nuveen*, 692 F.3d at 305.

As one would expect, when faced with Pennsylvania's COM rule soon thereafter in *Liggon-Redding*, we concluded that it also did not conflict with any Federal Rule, including Rules 7, 8, 9, 11 or 41(b); that it was outcome determinative; that failing to apply it would encourage forum shopping and result in inequitable administration of the law; and that no countervailing federal interest prevented its application in

---

[10] New Jersey's AOM statute provides for a sixty-day extension of time to file the AOM for good cause shown, and provides for dismissal with prejudice, rather than without. N.J.S.A. § 2A:53A-27, 29; *Chamberlain*, 210 F.3d at 157-58.

federal court. 659 F.3d at 262-65. And, as in New Jersey, because enforcing the rule without its consequence would be a rather pointless exercise, we also enforced Pennsylvania's own penalty for failing to comply, along with its primary condition precedent—that a defendant may move to dismiss an action without prejudice only when sixty days have passed from the time of suit without the production of a COM. *See id*. at 263.

Because we reversed on the ground that the pro se plaintiff in *Liggon-Redding* in fact had complied with the COM requirement, we had no need to consider Pennsylvania's equitable exceptions of substantial compliance or justifiable excuse, nor did we determine whether the other conditions precedent to dismissing an action, including the notice requirement, were substantive law. In fact, all of those additional conditions, save one—that a timely motion for an extension of time could not be pending—were not enacted until after the plaintiff in *Liggon-Redding* initiated her suit. *See id.* at 260 (stating the plaintiff's COM was due on January 18, 2008); Pa.R.C.P. No. 1042.6 (noting amendments adopted and effective on June 16, 2008).[11]

---

[11] The changes to the Pennsylvania Rules were made effective on June 16, 2008, after the court had received briefing on the issue, but before it finally dismissed the case in October 2008. *See Redding v. Estate of Sugarman*, No. 07-4591, 2008 WL 4682617, at *1 (E.D. Pa. Oct. 22, 2008). The court did not mention the amendments there, but even if it had, notice was not an issue, as the court in *Liggon-Redding* repeatedly provided notice to the pro se plaintiff. 659 F.3d at 260-61.

16

What *Chamberlain*, *Nuveen*, and *Liggon-Redding* reflect is that we have already applied as substantive law the COM requirement and its New Jersey analogue, along with each state's consequence of failing to comply, and at least one associated condition precedent to dismissal. Uchal, moreover, does not argue that we should ignore *all* the substance of Rule 1042.7, for it is that Rule which vested him with the right to dismissal in the first place. Instead, he seeks to enforce only that portion of Rule 1042.7 that is favorable to him. That is, he would have us apply a defendant's right to dismissal for a plaintiff's non-compliance with the COM requirement, but ignore the fact that the Pennsylvania Supreme Court has vested a defendant with that right only when a plaintiff receives thirty days' notice.[12] Neither our case law nor common sense supports that approach. Instead, they counsel that the notice requirement, as a condition precedent to dismissal, is substantive law to be applied, along with the COM requirement itself, by federal courts sitting in diversity.

---

[12] Making his position more perplexing, Uchal stated at argument that at least one of Pennsylvania's other conditions precedent to dismissal—that no motion was pending for a determination of whether a COM is actually necessary, *see* Pa.R.C.P. No. 1042.7(a)(1)—*does* apply. While we reach no conclusion as to whether that Rule is substantive law, we note the unreconciled conflict in Uchal's position.

17

### 2. The Notice Requirement is Substantive Law

Uchal argues that, whatever we may glean from our precedent, the application of our three-part *Erie* test requires us to hold that Rule 1042.7's notice requirement is procedural. Specifically, he argues that (1) it is in direct conflict with the Federal Rules; (2) it is outcome determinative only in the most limited sense; and (3) the failure to apply it in federal court would not frustrate *Erie*'s twin aims. Our independent analysis under this test leads us to the opposite conclusion.

First, we discern no conflict whatsoever between the substance of Rules 1042.6-7 and Federal Rules 7(b) and 12(b). Rule 7(b) "governs the application to the court for an order and requires that any application to the court be by motion." *Liggon-Redding*, 659 F.3d at 262. Uchal argues that applying the notice requirement from Rule 1042.7 means that we must apply the procedure by which dismissal is accomplished in state court, that is, a filing of a praecipe with the prothonotary, and that because Rule 7 provides for motions and not praecipes, the federal and state rules irreconcilably conflict.

We have already resolved this alleged conflict, however, and not in Uchal's favor. For when we held in *Liggon-Redding* that the COM requirement was substantive law that provided a defendant with a right to seek dismissal and did not present any conflict with Rule 7, we implicitly rejected the argument that the differences in the mechanism to accomplish that dismissal, i.e., a praecipe filed with a prothonotary in state court versus the filing of an appropriate motion in federal court, gave rise to any conflict. *Id.* at 265;

18

*see also Nuveen*, 692 F.3d at 303 n.13 (concluding it was appropriate to file a motion for summary judgment to effectuate dismissal pursuant to the New Jersey AOM requirement). The "conflict" urged by Uchal is therefore a false one, as the availability of motions practice in federal court to accomplish dismissal is unaltered by a requirement that federal courts adhere to Pennsylvania's notice requirement as a condition precedent to that dismissal. Yet again, "state policy can be effectuated without compromising any of the policy choices reflected in" Rule 7. *Chamberlain*, 210 F.3d at 160.

Nor is there a conflict with Rule 12(b), which tests the sufficiency of pleadings. As we have made clear, the COM requirement "does not have *any effect* on what is included in the pleadings of a case or the specificity thereof." *Liggon-Redding*, 659 F.3d at 263 (emphasis added) (internal quotation marks omitted). That is, the COM "is not part of the complaint, nor does it need to be filed with the complaint." *Nuveen*, 692 F.3d at 303. Rather, the COM requirement and its conditions are facts that can form the basis for a motion for summary judgment. *See id*. at 303 n.13 ("That the [New Jersey] affidavit is not a pleading requirement counsels that a defendant seeking to 'dismiss' an action based on the plaintiff's failure to file a timely affidavit should file a motion for summary judgment under Rule 56, and not a motion to dismiss for failure to state a claim under Rule 12(b)(6)."). Because a motion for summary judgment can be filed whenever appropriate, there is no conflict between the timelines of the COM requirement, including thirty days' notice, and a defendant's right to terminate a plaintiff's case for the failure to comply. *See* Fed. R. Civ. P. 56 ("Unless a different time is set by local rule or the court

orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.").[13]  Uchal's argument for a conflict with Rule 12, based on the twenty-one day deadline for filing a motion to dismiss, is therefore a non-starter.  Rather, "these Federal Rules and the [Pennsylvania Rules] can exist side by side, 'each controlling its own intended sphere of coverage without conflict.'"  *Chamberlain*, 210 F.3d at 160 (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752 (1980)).

Second, failing to require notice is plainly outcome determinative, as it was for Schmigel here.  Indeed, the Pennsylvania Supreme Court altered the COM Rules specifically because the Court wished to avoid the termination of meritorious actions when, "within hours of being put on notice that he mistakenly did not meet all the technical requirements of the rule, [a plaintiff] move[s] to rectify that mistake and supplie[s] the technically missing COM."  *Womer*, 908 A.2d at 282 (Baer, J., dissenting).

---

[13]  A hypothetical demonstrates the logic of our precedent that a motion for summary judgment should be filed, rather than a motion to dismiss:  If a plaintiff files a complaint and serves a defendant the next day, the plaintiff has fifty-nine more days to file a COM.  The defendant, meanwhile, must file a motion to dismiss within twenty-one days.  The defendant could thus not use a motion to dismiss to terminate the action because his right to do so would not arise until thirty-eight days after his answer was due.  *See Nuveen*, 692 F.3d at 303 (observing that the "temporal separation of the filing of the complaint and the [New Jersey AOM]" means that an AOM will often be filed "after the defendant files its answer").

While Uchal concedes, as he must, the conclusive effect on Schmigel's case of his failure to provide thirty days' notice and opportunity to cure, Uchal argues that the COM Rules would be outcome determinative only in the rare case.[14] The frequency with which this issue has arisen in district courts, however, belies Uchal's argument.[15]

---

[14] The Dissent, meanwhile, states that the general COM requirement from Rule 1042.3 is "of course" outcome determinative, with the consequence of failing to comply a dismissal without prejudice, so long as the statute of limitations has not run. Dissent 2, 7. Rule 1042.3, however, is outcome determinative only because another part of the COM regime—Rule 1042.7—mandates that outcome. That is, district courts do not administer the consequence of the failure to comply based on federal common law, but instead on the consequence a state provides. *Compare* Dissent 2 (acknowledging the consequence for failing to comply with Pennsylvania's COM requirement is generally dismissal without prejudice), *with Nuveen*, 692 F.3d at 305 (stating the consequence of failing to comply with New Jersey's AOM requirement is dismissal *with* prejudice). As noted above, however, Rule 1042.7 provides that in Pennsylvania that consequence is vested only upon thirty days' notice to a plaintiff.

[15] *See, e.g.*, *TranSystems Corp. v. Hughes Assocs., Inc.*, No. 14-1541, 2014 WL 6674421, at *5 (M.D. Pa. Nov. 24, 2014) (declining to dismiss action when COM was filed seventy-one days after a complaint was filed and noting that "federal courts have frequently declined to dismiss cases pursuant to Rule 1042.3 where the plaintiff has timely cured the failure to file a certificate of merit by filing a certificate of

21

Finally, consistent application of the COM requirement will ensure equitable administration in both federal and state courts and will prevent forum shopping by discouraging defendants from removing to federal court when faced with actions filed near the end of the statute of limitations. Conversely, it would not only be inequitable, but irrational, to dismiss meritorious claims based solely on a

merit after receiving notice of this deficiency from the defendant"); *Moyer v. Berks Heim Nursing Home*, No. 13-4497, 2014 WL 1096043, at *6 (E.D. Pa. Mar. 20, 2014) (holding that dismissal would be inappropriate because "Plaintiffs filed a certificate of merit within 30 days of defendants' motion to dismiss"); *Fabian v. United States*, No. 13-1656, 2013 WL 5525647, at *2 n.2 (E.D. Pa. Oct. 7, 2013) ("[T]he Pennsylvania Supreme Court's 2008 amendments to the Pennsylvania Rules of Civil Procedure affect the COM requirement in a substantive way by affording the plaintiff 'ample notice' rights before the defendant is permitted to file the actual praecipe for entry of a judgment of *non pros*."); *Bellinger v. Pa. Dep't of Corr.*, No. 12-2374, 2013 WL 424886, at *2 (M.D. Pa. Feb. 1, 2013) (noting that Rule's "notice requirement has been declared to be procedural and thus inapplicable in federal courts; accordingly, a defendant in federal court may move for judgment of non pros in a Rule 12 motion to dismiss without prior notice"); *Robles v. Casey*, No. 10-2663, 2012 WL 382986, at *3 (M.D. Pa. Feb. 6, 2012) (declining to dismiss case when plaintiff filed COM eight days after defendant sought dismissal); *Keel-Johnson*, 2009 WL 648970, at *6 (stating that "new Rule 1042.6 severely limits the availability of non pros by permitting judgment only after ample notice to plaintiffs").

state rule, when that very same rule, specifically amended as a result of a virtually identical scenario to this one, prevents dismissal in state court. And while we generally look to concerns that a *plaintiff* will forum shop, visiting the consequences of inequitable administration of the law upon a *defendant*, we may consider the reverse as well, where the equities require. *See Nuveen*, 692 F.3d at 304-05 (considering whether applying a New Jersey rule would provide a defendant "incentive to remove a case from state to federal court").[16]

Because there is no federal interest weighing against applying the same notice requirement as the Pennsylvania Supreme Court, our *Erie* decision is a clear one:[17] The

---

[16] *See also S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.*, 60 F.3d 305, 311 (7th Cir. 1995) ("If a rule so favorable to plaintiffs is inapplicable in diversity cases, defendants in such cases will have an added incentive to remove a diversity case to federal district court, just as in the days before the *Erie* decision, when a more favorable substantive rule of federal common law might induce a defendant to remove a case from state to federal court . . . ."); Michael Steven Green, *The Twin Aims of Erie*, 88 Notre Dame L. Rev. 1865, 1874 (2013) ("[T]he forum shopping test is answered by considering whether the difference between federal and forum state standards would, ex ante, influence the plaintiff's choice to bring the action in federal or state court (or the defendant's choice to remove to federal court).").

[17] We recognize that in *Nuveen* we held two protections provided by the New Jersey Supreme Court to be procedural, rather than substantive: a one-sentence "addition

23

condition of thirty days' notice prior to seeking dismissal of an action for failure to comply with the COM regime is substantive and must be applied in federal court. Uchal was therefore required to provide Schmigel with notice before he had a right to dismiss this action, and his failure to do so requires reinstatement of this action in the District Court.[18]

---

to New Jersey's Civil Case Information Sheet referencing the AOM Statute," and an "accelerated case management conference" held within ninety days of the filing of the complaint, where the trial judge is to remind a plaintiff of the need to file an AOM. 692 F.3d at 300. We held the addition to the civil cover sheet to be procedural because "the use of a particular form generally is a procedure of a state court, and the information provided to parties by a state court via its forms usually will not result in forum shopping." *Id*. at 304. We also held that the failure to hold an accelerated case management conference could not be outcome determinative, because even in state court, the lack of such a conference "will not prevent an action from being dismissed based on the failure to file a timely affidavit." *Id.* at 305 (citing *Paragon Contractors, Inc. v. Peachtree Condo. Ass'n*, 997 A.2d 982, 987 (N.J. 2010)). Thus, we concluded that "[t]he timing of a conference that will not affect the outcome of a proceeding is unlikely to promote forum shopping and will not result in an inequitable administration of the [AOM] Statute." *Id*. This is a far cry from Rule 1042.7, which states that a claim may be dismissed only if the conditions of the Rule are met.

[18] As an alternative grounds for reversal, Schmigel argues that he satisfied Pennsylvania's two equitable exceptions for late filing: substantial compliance and justifiable excuse. We have yet to apply those exceptions as

## III.   Conclusion

States are free to vest defendants with a mechanism to swiftly terminate unmeritorious malpractice actions, as Pennsylvania did.  But in Pennsylvania, that right does not vest unless at least one condition is met: thirty days' notice to

---

substantive law, but have applied New Jersey's common law exceptions of substantial compliance, extraordinary circumstances and common knowledge.  *See Nuveen*, 692 F.3d at 306, 308-10; *see also Snyder v. Pascack Valley Hospital*, 303 F.3d 271, 276 (3d Cir. 2002) (reversing dismissal and allowing late-filed AOM under New Jersey equitable principles after an attorney "candidly concede[d] inadvertence in failing to file the affidavit of merit within the sixty-day period"); *Newell v. Ruiz*, 286 F.3d 166, 169-71 (3d Cir. 2002).  In response, Uchal accepts that Pennsylvania's exceptions, based in Pennsylvania Rules 126 and 3051, *see Womer*, 908 A.2d at 276, 279, are substantive law, as well, *see, e.g.*, *Rogan v. Cnty. of Lawrence*, No. 12-1375, 2013 WL 4511316, at *7 (W.D. Pa. Aug. 23, 2013); *Ramos v. Quien*, 631 F. Supp. 2d 601, 612 (E.D. Pa. 2008); *Stroud*, 546 F. Supp. 2d at 250-53, but argues that Schmigel satisfied neither.  Because we reverse on other grounds, we need not decide the substantive nature of those exceptions or their application to the facts before us.  We note, however, the irony that Uchal, on the one hand, accepts that equitable exceptions apply from far-flung sections of the Pennsylvania Rules (and must accept our application of New Jersey common law protections limiting the effect of the AOM requirement, *see Snyder*, 303 F.3d at 276-77), but objects, on the other, to the application of protections that are expressly set forth in the Rules pertaining to the COM regime itself.

a plaintiff. That right and its attendant condition of fair notice are each substantive law. Accordingly, the District Court erred in dismissing Schmigel's claim, and we will reverse and remand for proceedings consistent with this opinion.

**SCHMIGELv. UCHAL**

**No. 14-3476**

---

**RENDELL**, <u>Circuit Judge</u>, dissenting:

Rule 1042.7 regulates procedure, as does Rule 12 of the Federal Rules of Civil Procedure. Nothing could be clearer than the principle that a federal procedural rule "is valid in all jurisdictions, with respect to all claims, regardless of its incidental effect upon state-created rights." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 410 (2010) (plurality opinion). The majority ignores this principle, and its holding runs afoul of Supreme Court precedent and our own caselaw as well. I disagree with the majority's decision to incorporate state court procedural rules into our federal practice and, as a result, I dissent.

To begin, I would recast the facts of this case, as I believe they have been mischaracterized. Uchal performed a laparoscopic adjustable gastric band procedure on Schmigel on May 10, 2010. Schmigel did not lose weight after the surgery. On March 27, 2012, another physician performed a CAT scan and discovered that the band was never placed around Schmigel's stomach. Schmigel filed a negligence cause of action against Uchal in federal court two years later on March 19, 2014—only eight days before the statute of limitations was set to expire.[1] Jurisdiction was based on

---

[1] This presumes that Schmigel was entitled to application of the discovery rule, that his prior failure to lose weight did not

diversity of citizenship. Schmigel failed to attach a COM to his complaint or to file one within 60 days of filing. Uchal declined to waive service of summons, which he was entitled to do. *See* Fed. R. Civ. P. 4(d). Schmigel complains that Uchal "refused to waive service of summons, to enter an appearance, or to take any action whatsoever that might alert Plaintiff of a readily curable and honest mistake." (App. 66.) But Uchal had no obligation to notify Schmigel of his error. Schmigel did not cause the summons to be issued until May 6.[2] On May 27, Uchal filed a motion to dismiss based on the lack of COM. In other words, Uchal filed a timely motion to dismiss "within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1)(A)(i). Uchal complied with the Federal Rules of Civil Procedure; he had no obligation to file a motion to dismiss earlier than the 21-day deadline imposed by the federal rules. The District Court granted the motion, as Schmigel had not filed a timely COM and failed to show substantial compliance with the COM rule, or extraordinary circumstances excusing his failure. Because, by that time, the statute of limitations had run, Schmigel was out of court. This was not a snap judgment of non pros without notice—as Rule 1042.7 was designed to prevent. But for Schmigel's tardiness in filing and serving the complaint, he would have been notified of his failure by the motion to dismiss and had an opportunity to rectify his error, contest the applicability of the COM rule, or re-file his action. Schmigel

---

notify him of Uchal's negligence, and that his cause of action did not accrue until March 27, 2012.

[2] The District Court docket does not reflect when he actually served Uchal.

is attempting to rectify circumstances of his own creation: he waited until eight days before the statute of limitations expired before filing his complaint, he waited 48 days to obtain a summons, he did not file a COM within 60 days of filing his complaint, and he chose to file in federal court.

The majority strains to save Schmigel's case by incorporating the "condition of thirty days' notice prior to seeking dismissal of an action for failure to file the COM regime" as substantive law that must be applied in federal court. (Majority Op. 23-24.) Specifically, the majority incorporates the state court rule that "[t]he prothonotary, on praecipe of the defendant, shall enter a judgment of non pros against the plaintiff for failure to file a certificate of merit within the required time provided that . . . the praecipe is filed no less than thirty days after the date of the filing of the notice of intention to enter the judgment of non pros." Pa. R. C. P. No. 1042.7(a)(4). Is this not, clearly, a procedural rule that is inappropriate to incorporate into federal practice?

My analysis confirms that the answer is "yes." The first step in determining whether a state rule applies in federal court is assessing whether the state rule contravenes federal procedural rules: "First, a court must determine whether there is a direct collision between a federal rule and the state law or rule . . . . If there is a direct conflict, the federal court must apply the federal rule and reject the state rule." *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262 (3d Cir. 2011).

In this case, there is a direct conflict. The majority holds that Uchal had no "right" to "seek dismissal in the first place" because he "had not waited thirty days after giving

3

notice of the deficiency to allow for cure before filing his motion to dismiss." (Majority Op. 4.) But Uchal filed his motion to dismiss within 21 days after being served with the summons. How could he give 30 days' notice before filing his motion when the Federal Rules of Civil Procedure mandate that he must file a motion to dismiss within 21 days?[3] Schmigel even *acknowledges* that "a motion to dismiss, rather than a praecipe for entry of judgment of *non pros,* is procedurally appropriate. This may, *arguendo,* indicate that there is a direct collision between . . . Pa. R. Civ. P. 1042.7 and the Federal Rules of Civil Procedure."[4] (Schmigel Reply 11.)

The Federal Rules do not require defendants to give written notice of their intention to file a motion to dismiss. Nor do they preclude courts from entering judgments without such notice. Rule 12 only requires defendants to file either an

---

[3] The majority asserts that there is no timing conflict between the 21-day requirement under Rule 12 and the 30-day notice requirement under Rule 1042.7 because Uchal's motion should have been considered a motion for summary judgment. But Uchal did file a motion to dismiss and he had to do so within 21 days. Is the majority saying that a motion to dismiss was not available as a procedural mechanism to Uchal? Does Rule 12 not apply in this case? I suggest that this apparent confusion cautions further against our incorporating the state rule into our federal rules.

[4] Schmigel made this statement because he was advocating for the adoption of Pennsylvania Rule of Civil Procedure 1042.6, not 1042.7.

4

answer or a motion, not a notice of intent to file a future motion. Rule 12 controls because its scope is "'sufficiently broad' to . . . implicitly, to 'control the issue' before the court." *Burlington N. R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987) (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749 (1980)). Rule 12 need not explicitly state that defendants are not required to provide notice of intent to dismiss because it so states by implication. It does not require notice and our Court cannot add a notice requirement to a rule that plainly has none. Moreover, adding such a notice requirement will create varied dismissal procedures, which will negate "[o]ne of the shaping purposes of the Federal Rules," which is "to bring about uniformity in the federal courts." *Hanna v. Plumer*, 380 U.S. 460, 472 (1965) (quoting *Lumbermen's Mut. Cas. Co. v. Wright*, 322 F.2d 759, 764 (5th Cir. 1963)).

Importantly, the Supreme Court has specifically held that, when there is a rules conflict, even though a substantive state law applies in federal court, the procedural protections that accompany that particular state law do not apply. In *Shady Grove*, the Supreme Court held that a class action could be certified in federal court even though New York law prohibited the pursuit of such claims in a class action. *Shady Grove* rejected the respondent's argument that class certification abridged the "substantive right . . . not to be subject to aggregated class-action liability" conferred under New York law. 559 U.S. at 409. *Shady Grove* held that Rule 23 of the Federal Rules of Civil Procedure, which governs class certification, trumped the state law barring such actions. The plurality explained: "A Federal Rule of Procedure is not valid in some jurisdictions and invalid in others—or valid in some cases and invalid in others—depending upon whether its effect is to frustrate a state substantive law (or a state

5

procedural law enacted for substantive purposes).” *Id.* As in *Shady Grove*, here the COM substantive rule applies, but the procedural rule does not.

Even if there were no conflict and we were to proceed with an analysis under *Erie*, Rule 1042.7 would still not apply. *Erie* holds that a federal court sitting in diversity must apply state substantive law and federal procedural law: “Under *Erie*, a court assesses the substantive/procedural dichotomy with the objective that ‘the outcome of the litigation in the federal court [will] be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.’” *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 302 (3d Cir. 2012) (quoting *Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945)). “This ‘outcome determinative test’ focuses on the ‘twin aims’ of discouraging forum shopping and avoiding ‘the inequitable administration of the laws.’” *Id.* (quoting *Hanna*, 380 U.S. at 468). We must ask whether applying the state rule “would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State” or “would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court.” *Hanna*, 380 U.S. at 468 n.9. “Consideration of the ‘twin aims’ should produce a decision favoring application of state law only if one of the aims is furthered.” *Nuveen*, 692 F.3d at 302. Rule 1042.7 satisfies neither requirement.

We concluded in *Liggon-Redding* that the COM requirement was outcome determinative because it made a

6

difference as to the character or result of the litigation. Rule 1042.3 "was created to ensure that professional negligence claims are meritorious, and the [COM] requirement prevents needless waste of judicial time and resources which would otherwise be spent on non-meritorious claims." *Liggon-Redding*, 659 F.3d at 262-63. The COM requirement exists to ensure that malpractice suits are meritorious. That requirement is, of course, substantive and outcome-determinative and creates no conflict with federal procedural rules. Rule 1042.7 has nothing to do with the character of the litigation and is, accordingly, not outcome-determinative.

Because not applying Rule 1042.7 would doom Schmigel's suit, the majority reasons that Rule 1042.7 is "outcome-determinative." However, as the Supreme Court said in *Hanna*, to some extent, "every procedural variation is 'outcome-determinative,'" but state court procedural variations do not automatically apply in federal court simply because the plaintiff will be out of court. *Hanna*, 380 U.S. at 468. Rather, as noted above, it is the effect on the character or result of the litigation that is the key. In *Hanna*, the Supreme Court held that federal, not state, procedural rules governed service of process in a diversity case, even though applying the state court rules would have determined the outcome. It noted that "having brought suit in a federal court, a plaintiff cannot then insist on the right to file subsequent pleadings in accord with the time limits applicable in state courts, even though enforcement of the federal timetable will . . . result in determination of the controversy against him." *Id.* at 468-69. The majority states that "were this case in state court, Schmigel's claim would not have been dismissed because his attorney filed the COM as soon as he was notified of the deficiency and well within the thirty-day

window for cure." (Majority Op. 12.) That is not what outcome determinative means. Moreover, Schmigel *chose* to file suit in federal court, thereby being subject to the Federal Rules of Civil Procedure. If he wanted the benefit of state court procedures, he should have filed his action in state court.

Schmigel argues that ruling in Appellees' favor will result in inequitable administration of the law. But we have already rejected a virtually identical argument regarding procedural protections for plaintiffs who forget or are unaware of the affidavit of merit requirement in New Jersey, which is similar to Pennsylvania's COM requirement. In *Nuveen*, the appellant "argue[d] that the two protections the New Jersey Supreme Court has established to dull the severe consequences of the failure to file a timely affidavit of merit . . . are substantive requirements . . . that must be applied in federal court." *Nuveen*, 692 F.3d at 300. In *Nuveen*, we rejected this argument because "plaintiffs (and their attorneys) are required to know the law. They should not need to be reminded of the affidavit requirement." *Id.* at 304 (footnote omitted). Furthermore, we held that "*the lack of a reminder does not result in inequitable administration* of the [Affidavit of Merit] Statute." *Id.* at 304 (emphasis added). We also noted that "[i]f Nuveen's counsel had been diligent, it would not have needed a reminder . . . that it had an obligation to serve affidavits of merit." *Id.* at 310. *Nuveen* dictates the result here. As noted above, Schmigel's counsel was anything but diligent in many ways. Instead of requiring basic attorney diligence, the majority fashions new law contravening our precedent.

Schmigel also argues that refusing to apply Rule 1042.7 would encourage forum-shopping because plaintiffs would avoid federal court for fear of having their cases dismissed for inadvertent errors. This argument makes no sense. It is implausible that a plaintiff would be *aware* that federal courts have different dismissal procedures for failure to file a COM and still *forget* to file a timely COM. Rule 1042.7 fails the *Erie* test. Denying Schmigel's appeal is not inequitable and would not result in forum-shopping.

State court procedural rules do not belong in federal court. I respectfully dissent.